# JOHN W. VOGELSONG, Appellant, v. ST. LOUIS WOOD FIBRE PLASTER COMPANY et al., Respondents.

**St. Louis Court of Appeals.    Argued and Submitted March 15, 1910. Opinion Filed March 22, 1910.**

1. **PLEADING: Code: Bill in Equity.** The old form of a bill in equity is not in use in Missouri, section 592, Revised Statutes 1899, providing that plaintiff's first pleading is the petition, and prescribing what it shall contain.

2. **EQUITY: Pleading: Prayer for General Relief.** Section 592, Revised Statutes 1899, requires the petition to contain a demand for the relief to which plaintiff supposes himself to be entitled, and, if the recovery of money is demanded, to state the amount thereof, or facts which will enable the amount to be ascertained. Section 776 provides that in any other case than default the court may grant plaintiff any relief consistent with the case made by him and embraced within the issues. *Held*, that where the petition in an equity case contained a prayer for general relief, the court might disregard prayers for a discovery and accounting, and award plaintiff any other relief to which the facts alleged in the petition entitled him.

3. ————: ————: **Bill of Discovery: Abolished by Code.** A bill of discovery, as known to ancient chancery practice, is not available since the adoption of the Code; its provisions for taking depositions obviating the necessity of a bill of discovery.

4. ————: ————: **Accounting.** An action for accounting will not lie as a ground for relief in equity, unless founded upon some known and established equitable ground of action.

5. **TRUSTS: Constructive Trusts: Pleading: Sufficiency of Petition.** The petition alleged: That plaintiff was the owner of a patented machine for making wood fiber plaster and leased the right to use one of such machines in a certain territory to Willis, who acted as trustee for the St. Louis Wood Fibre Plaster Company, a corporation thereafter organized, upon certain royalties and other considerations, and that the lessee agreed not to operate the machine outside the territory named, or sublease it to any parties operating outside such territory, and not to use any other machine in such territory, the lease, which was witnessed by certain individual defendants, to be

Vogelsong v. Wood Fibre Plaster Co.

void at plaintiff's option if the lessee violated its terms; that the individual defendants referred to were officers of and had the control of the Acme Cement Plaster Company, a foreign corporation; that the St. Louis Company and the other defendants have only partly performed the contract, in that "it has paid your petitioner" a certain sum as agreed, but "that the said defendants" owned and controlled the Acme Company, and also became the owners and controllers of the St. Louis Company, which was organized by defendants "with a fraudulent intent to injure" plaintiff and with the intention of abandoning that company thereafter; that afterwards another wood paper machine was patented, several of which were purchased by the Acme Company and used, in violation of the lease, when the St. Louis Company was abandoned by the individual defendants above referred to, with the knowledge and consent of Willis and another, and the machine leased to the St. Louis Company by plaintiff was taken by the defendant Acme Company and operated; that the Acme Company and individual defendants were operating machines in towns out of the territory named in the lease; and that large sums have become due plaintiffs thereby. The prayer is that the Acme Company be decreed trustee for the St. Louis Company and, with the other defendants, be required to account to plaintiff for royalties due. No relief was asked against the St. Louis Company, and there was no allegation that the lease was assigned to the Acme Company by the St. Louis Company, nor that the former Company had ceased business, and no specific allegation that the St. Louis Company transferred to it the leased machine. *Held*, that the facts alleged did not establish a constructive trust against the Acme Company or the individual defendants; the mere fact that the same persons were interested in the two companies as stockholders or officers, even if that were alleged, not of itself being sufficient to charge one company with the acts of the other.

6. **CORPORATIONS: Two Corporations Controlled by Same Parties: Liability.** The mere fact that the same parties are in two companies, as stockholders, managers or otherwise, is not in itself sufficient to render one company chargeable with the acts of the other.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow,* Judge.

AFFIRMED.

*Gardner, Morgan & Wood* for appellant.

(1) Wherever one person is placed in such a relationship to another, by the act or consent of the other, or by the act of a third person or the law, that he becomes interested for him or interested with him in any subject of property or business, he is prohibited from acquiring rights antagonistic to the persons with whose interests he has become associated. Barrie v. Railroad, 138 Mo. App. 557; American Notes to Keech v. Sandford, 1 White & Tud. Cas. in Equity, 4 Am. Ed., p. 62, *58; Trice v. Comstock, 121 Fed. Rep. 620 and cases cited; Barthold v. Land & L. Co., 91 Mo. App. 233; Thompson v. Abbott, 61 Mo. 176; Huyker v. School Dist., 72 Mo. 643; Eaves v. Bank, 79 Mo. 182. (2) To make available the equitable remedies in favor of a creditor of a defunct corporation, it is sufficient that it had done or suffered acts which destroyed the end and object for which it was created. Slee v. Bloom, 19 Johns (N. Y.) 456; Briggs v. Penniman, 8 Cow. (N. Y.) 387; 3 Thomp. on Cor., sec. 3345; Barthold v. Land & L. Co., 91 Mo. App. 233; Barrie v. Railroad, supra. (3) Everything is presumed against the wrongdoer. Lupton v. White, 15 Ves. 432; Hart v. Ten Eyck, 2 Johns Ch. (N. Y.) 62; Railroad v. Richards, 40 Ill. App. 560, 30 L. R. A. 33; Richmond v. D. D. S. C., etc., 40 Ia. 264; Amory v. Delamirie, 1 Smith's L. C., part 1, p. 679; 2 Hughes on Procedure, p. 1172.

*W. E. Fisse* for respondents.

STATEMENT.—This is a suit in equity, commenced in the circuit court of the city of St. Louis, by plaintiff against the St. Louis Wood Fibre Plaster Company, the Acme Cement Plaster Company, Samuel Lazarus, S. A. Walker, Jas. R. Dougan, Gordon Willis and F. P. Hunkins. The second amended petition in the cause avers that the plaintiff was the owner of a patented

device called the Vogelsong Wood Fibre Machine, a device intended for reduction of wood to fibre, which was to be used in making wood fibre cement plaster, it being averred that this was the first machine invented for reducing wood to fibre and was the only one on the market; that in order to secure the means of making wood fibre cement plaster, the defendant Willis, as trustee of the St. Louis Wood Fibre Plaster Company, but which company was not at that time organized as a corporation, on the 2d of December, 1901, entered into a contract with the plaintiff, called therein "lessor," Willis being designated as "lessee," whereby the lessor, in consideration of the rental to be paid as thereinafter set out and in consideration of the faithful performance by the lessee, or his assigns, of each and every one of the agreements mentioned, leases unto the lessee or his assigns, "one Vogelsong wood fibre machine," manufactured under patents owned and controlled by plaintiff, the lessor agreeing to grant to the lessee or his assigns, the right to use the machine in certain designated territory during the life of the letters patent to be issued on the machine, the lessor agreeing not to sell, rent, lease, or in any manner permit the use of the machine in the territory described other than to the lessee or his assigns, to furnish the lessee or his assigns an additional machine or machines when the manufacturing business of the lessee requires, and various other agreements not now necessary to note. The lessee on his part agreed to accept the conditions of the contract; to pay the lessor a royalty of twenty-five cents per neat ton for the first two thousand tons of plaster or other mixtures manufactured or produced from or by each and every machine, and twelve and one-half cents per neat ton for all quantities produced thereafter; to pay the lessor upon receipt of the railroad company's bill of lading of said machine, consigned to St. Louis or such other point as may be designated by the lessee, the sum of five hundred dol-

lars, for which the lessee is to receive credit as advance payment on the royalty to be paid as in the lease provided, keeping the machine in good repair and returning it to the lessor at the expiration of the lease in good condition; if the product of the machine is marketed as a commodity, then the lessee is to pay the lessor a royalty of fifteen cents per hundred pounds of wood fibre thus sold; not to operate the machine outside of the territory before mentioned or to sub-lease the machine to any parties operating outside of the territory; to diligently push the business in all the territory mentioned in every reasonable and consistent manner and to lease additional machines from said lessor or his assigns as fast as the business requires, it being mutually agreed between the parties "that in consideration of the terms of this contract . . . said lessee shall not use or operate, during the life of this contract, any other machine or machines within said territory, for the reduction of wood fibre, save and except the Vogelsong wood fibre machine." It was further agreed that "a failure upon the part of said lessee to comply with the terms of the contract shall void the same at the option of the lessor, and authorize said lessor to enter upon the premises and remove the machine therefrom, and to recover from said lessee any payment then due under this contract," the lessor to be allowed to lease or operate the machines within the territory designated if the lessee neglect to occupy it, and that the lessee was to employ the lessor for a period of three months from the date of the contract at $150 per month and reasonable expenses, it being stipulated that the terms of the contract of the lease should extend and become binding upon the executors, administrators, legal representatives and assigns of the lessor and upon the successors or assigns of the lessee. This contract of lease or license was signed by the plaintiff and by Gordon Willis, trustee for the St. Louis Wood Fibre Plaster Company, and witnessed

by the defendants Lazarus, Walker and Hunkins. It is further averred in this petition that the St. Louis Wood Fibre Plaster Company was afterwards organized and began to make wood fibre cement plaster in pursuance of the terms of the agreement, and that the defendants Lazarus, Walker and Dougan had at all times the controlling interest in the capital stock of the Acme Cement Plaster Company, a corporation organized under the laws of the State of Illinois; that they still hold said interest; that Lazarus is president, Walker vice-president and Dougan secretary and treasurer, and it is stated on information and belief that Hunkins and Walker are stockholders in the Acme Cement Plaster Company and its selling agents, and that the same is operated and directed by Lazarus, Walker and Dougan. Averring performance of his part of the contract, plaintiff, describing himself in the petition as the petitioner, says the St. Louis Wood Fibre Plaster Company and the other defendants have carried out the contract only in part, in that "it has paid your petitioner the sum of $500, as provided, for advance payments on royalties upon receipt of the bill of lading of the machine;" afterwards made a payment of $500 on royalties; carried out the contract of hire for the personal services of plaintiff, and continued operations under the contract for about two years. It is then averred "that the said defendants" (not saying who of the defendants) owned and controlled, as aforesaid, the Acme Cement Plaster Company, and also became the owners and controllers of the St. Louis Wood Fibre Plaster Company; that the latter company was merely organized on the part of the defendants "with the fraudulent intent to injure this defendant" (undoubtedly meaning plaintiff), and it was designed by the defendants when said agreement was made, that when it should suit the purposes and interests of the Acme Cement Plaster Company and the defendants

above mentioned, the St. Louis Wood Fibre Plaster
Company was to be abandoned by them.

It is further averred that about two years after
entering upon the performance of the contract, another
wood fibre machine was patented and put on the
market, and several of them purchased by the Acme
Cement Plaster Company and used by it in making ce-
ment plaster, and that about the same time the St.
Louis Wood Fibre Plaster Company was abandoned by
the defendants Lazarus, Walker and Dougan with the
knowledge and consent "of said defendants Gordon
and Willis (sic), and the machine which had been op-
erated by the St. Louis Wood Fibre Plaster Company
was taken by the defendant, the Acme Cement Plaster
Company, and ever since has been used in the manu-
facturing operations of said defendant, the Acme Ce-
ment Plaster Company, and said machines have been
in use ever since so taken by said Acme Cement Plaster
Company as aforesaid." This use of another machine,
it is charged, is in violation of the agreement between
plaintiff and Willis, that the lessee Willis should not
use or operate during the life of the contract, any
other machine or machines within the territory desig-
nated, for the reduction of wood to fibre, save and
except the Vogelsong machine, and it is particularly
charged upon information and belief that the Acme
Cement Plaster Company is operating wood fibre ma-
chines about which the agreement was made, in two
towns in Texas and other places in the United States
to plaintiff unknown. Reciting the obligation to pay
the royalties and the agreement for the adjustment of
them, as set out in the lease, and that accurate records
were to be kept of the product and that by that contract
the St. Louis Wood Fibre Plaster Company was pro-
hibited from operating the Vogelsong machine
outside the territory heretofore designated or to sub-
lease the machine to any other parties operating out-
side of the territory, it is stated on information and

belief that the Acme Cement Plaster Company and the defendants Lazarus, Walker and Dougan are operating said wood fibre machines (meaning the Vogelsong machines) contrary to the terms of the contract in various outside places named and in other outside places to plaintiff unknown; that because of the operations of the defendants and "because of the premises herein," large sums of money have become due and owing plaintiff and although plaintiff has often and repeatedly requested an accounting of the St. Louis Wood Fibre Plaster Company, as by the terms of the contract made and provided, and of the Acme Cement Plaster Company and of the other defendants named, no accounting has been rendered and the defendants and each of them have wholly failed and still refuse to make the same or render any reports or quarterly statements which by the terms of the contract defendants were obliged to render to plaintiff. This second amended petition concludes as follows:

"Forasmuch, therefore, as your petitioner can have no adequate relief save in a court of equity, and to the end, therefore, that the defendants may. if they can, show why your petitioner should not have the relief hereby prayed, and that they may make full disclosure and discovery of all the matter aforesaid, and according to the best and utmost of their knowledge, remembrance, information and belief, full, true, direct and perfect answer make to the matters hereinbefore stated and charged, but not under oath, an answer under oath being expressly waived; and that the Acme Cement Plaster Company may be held as trustee for the St. Louis Wood Fibre Plaster Company, and that the Acme Cement Plaster Company and the other defendants hereinabove named may be decreed to account for and pay over the royalties or income, not only on the Vogelsong Wood Fibre Machine, but any other machines which they may have been operating, and which they are unlawfully withholding to the same ex-

tent, and as fully as though the St. Louis Wood Fibre Plaster Company was operating said machines under and by virtue of said contract hereinbefore set forth, and that they may be required to pay the costs of this suit, and other and further relief as to equity may seem meet in the premises and required by good conscience.''

The defendants demurred, filing separate demurrers, on the ground that this petition did not state facts sufficient to constitute a cause of action. The demurrers were sustained and plaintiff declining to plead further, final judgment was entered against plaintiff and discharging the defendants. From this plaintiff has duly perfected an appeal to this court.

REYNOLDS, P. J. (after stating the facts).— The petition is addressed ''To the Honorable Judge of the Circuit Court, City of St. Louis, State of Missouri, in Chancery sitting.'' We have long since abandoned in this State the old form of a bill in equity. Our statute (Revised Statutes 1899, sec. 592) providing that the first pleading on the part of the plaintiff is the petition, prescribes what it shall contain, the third requisite being that it shall contain ''a demand of the relief to which the plaintiff may suppose himself entitled. If the recovery of money be demanded, the amount thereof shall be stated, or such facts as will enable the defendant and the court to ascertain the amount demanded.'' Construing this latter clause, our courts have often held that when in a suit of equity, there is a general prayer for relief, as there is in this case, such relief will be granted as the facts set out will warrant. It was long ago decided that since the adoption of our Code, the bill of discovery, as known to the ancient chancery practice, no longer prevailed in this State, our courts holding that the statutory provisions for taking depositions have done away with the necessity of the old bill of discovery and that

while the deposition was not a substitute for the bill of discovery, all that could be accomplished by means of a bill of discovery could now be accomplished by means of depositions. See Eck v. Hatcher, 58 Mo. 235, l. c. 239; Larimore v. Bobb, 114 Mo. 446, l. c. 453, 21 S. W. 922; Tyson v. Farm & Home Savings & Loan Assn., 156 Mo. 588, l. c. 594, 57 S. W. 740; Strode v. Frommeyer, 115 Mo. App. 220, l. c. 223, 91 S. W. 167. Nor will a bill or action for an accounting lie as a ground for relief in equity, unless founded upon some known and established equitable ground of action. As illustrating this, see Pope v. Salsman, 35 Mo. 362. While our statute (R. S. 1899, sec. 776) provides, in case of default, for instance, that the damages or other relief shall not be other or greater than that which shall have been demanded in the petition, the same section provides, "but in any other case, the court may grant him any relief consistent with the case made by the plaintiff and embraced within the issues." This view has been held by the Supreme Court as having no application where the final judgment for defendant has been reached on demurrer. "In that event," says the court, "the prayer for general relief, supplemental to one for specific performance, cannot, in view of section 2039 (Revised Statutes 1889), be construed as a prayer for money judgment." [Rush v. Brown, 101 Mo. 586, l. c. 592, 14 S. W. 735.] Section 2039, Revised Statutes 1889, is now section 592, Revised Statutes 1899. That is to say, if sufficient facts are stated to entitle the party to relief, that the particular relief he may ask may, if necessary, be disregarded, and the court may grant him the relief to which the facts stated entitle him. So that applying these rules to the case before us, we disregard the prayer for discovery and for an accounting and pass to the consideration of the case on the facts stated in the petition. Without setting out the amended petition in full or the lease or license therein referred to, we think we have given

enough to show what is involved in this case, and briefly, the claim is that plaintiff, owner of a patented machine for making wood fibre plaster, sold or leased the right of the use of it for the term of the patent, to Gordon Willis in certain designated territory, Willis at the time acting for the St. Louis Wood Fibre Plaster Company, thereafter to be organized. That company was organized and Willis and Hunkins and Walker and Lazarus, the three latter being witnesses to the license contract and thereby undoubtedly intended to be charged by plaintiff with knowledge of it, proceeded under the contract for about two years, when they appear to have abandoned it and to have operated under another company organized by them, called the Acme Cement Plaster Company, and that company, using plaintiff's machine and other machines, carried on operations of manufacturing wood fibre cement plaster. This is charged to be contrary to the terms of the contract between plaintiff and Willis. The thought of the pleader seems to be that some sort of constructive trust was imposed on the individual defendants and on the Acme Cement Plaster Company, by reason of the fact that the same parties were in each concern, the charge being that the St. Louis Wood Fibre Plaster Company was organized by the defendants named with the fraudulent intent to injure "defendant" (sic), it being designed by defendants when the agreement was made, possibly meaning the agreement of lease with Willis, although this is not clear, that when it should suit the purposes and interests of the Acme Cement Plaster Company and the individual defendants, the St. Louis Wood Fibre Plaster Company was to be abandoned by them. This is all that may, by any construction, be held to charge fraud. Counsel cite in support of this theory of a constructive trust, various cases from this court, among others, Bertholdt v. Land & Lumber Co., 91 Mo. App. 233, and Barrie v. United Railways Co., 138 Mo.

App. 557, 119 S. W. 1020, also citing and quoting at length from McCourt v. Singers-Bigger, 145 Fed. 103. We are unable to see that these cases support plaintiff's contention. There is no averment of any transfer or assignment of the lease from the St. Louis Wood Fibre Plaster Company to the Acme Cement Plaster Company; no averment of privity between the two companies. No averment that the St. Louis Wood Fibre Plaster Company has gone out of business; merely that the defendants have abandoned it. If there was a breach of contract, it was a breach of the contract between him and the St. Louis Wood Fibre Plaster Company, made for that company by its trustee, Gordon Willis, by that company, and whatever remedy plaintiff has or whatever cause of complaint, would seem to be against that company. The mere fact that the same parties were in the two companies as stockholders or managers or otherwise, is not in itself sufficient to render one company chargeable with the acts of the other. We have pointed out the rule which saddles liability where there is identity of the parties in the two cases referred to and cited by plaintiff, that is in the Bertholdt and Barrie cases. The averments here made do not bring the case within the rule. No relief is asked and no facts stated that call for relief against the St. Louis Wood Fibre Plaster Company. It does not even appear that any of the individual defendants had a controlling interest in the St. Louis Wood Fibre Plaster Company. By his own statement plaintiff is a creditor at large of that company, with no established demand against it, and no adjudication of any demand or its amount, and no statement on which, by an interpretation of the pleading, we can say what that amount should be. It may be that that demand is so far in excess of the jurisdiction of this court that we would be without authority to pass on this case. He shows no right to hold the Acme Cement Plaster Company under the lease; if it

is true that it is using or has used his patented machine without license, he may have his right to an injunction against its further use and for royalties by way of damages. But that is not this action. At all events the facts stated are not sufficient to establish a constructive trust as against the individuals or against the Acme Cement Plaster Company, and as before said no relief whatever is asked against the St. Louis Wood Fibre Plaster Company.

The fraud and conspiracy charged, if any is charged, is that the individual defendants merely organized the St. Louis Wood Fibre Plaster Company with the fraudulent intent to injure the plaintiff—how they were to do so is not stated—and that it was designed by the defendants, when the agreement was made, that when it should suit the purposes and interests of the Acme Cement Plaster Company and the defendants, that the St. Louis Wood Fibre Plaster Company would be abandoned by them. How the abandonment of the St. Louis Wood Fibre Plaster Company by the defendants named was to affect plaintiff is not stated. He had, or at least avers, no contract with these individual defendants, not even a personal one with Willis, to stay in and with the St. Louis Wood Fibre Plaster Company. *Non constat* but that the last named company still flourished even after these defendants abandoned it. It is not even charged that the latter company sold or assigned or transferred the one machine leased—and there is but one charged to have been leased. For all that appears they may have obtained it without the consent of the St. Louis Wood Fibre Plaster Company.

Without going further into a consideration of the case or into a discussion of all the points presented in it by the learned counsel for appellant, we have reached the conclusion that the petition fails to state a case entitling plaintiff to any relief in equity on the facts

stated, and that the action of the circuit court in sustaining the demurrer to it was correct. The judgment is affirmed. All concur.

